[No. 15509.  Department One.  December 30, 1919.]

# E. C. Sowle, *Respondent,* v. F. F. Johnson *et al.,* *Appellants.*[1]

LANDLORD AND TENANT (129, 135)—UNLAWFUL DETAINER—DEFENSES —WAIVER BY TENDER—TIME FOR SERVING NOTICE.  Tender of the amount admitted to be due for rent prior to the commencement of an action for unlawful detainer, renewed by bringing the tender into court, waives the tenant's option in the lease for an extension of time to pay rent, and precludes the defense that the rent was not due and the notice to quit premature.

SAME (66) — IMPROVEMENTS BY TENANT — LIABILITY OF LESSOR. Where a pipe line constructed by the lessor was in compliance with the terms of the contract to deliver water on two of the highest points of the land, the tenant is not entitled to a credit upon his rent for the cost of reconstruction to better the service, incurred by him without authority from the lessor.

PRINCIPAL AND AGENT (39)—AUTHORITY OF AGENT—ADMISSIBILITY OF EVIDENCE.  It is not error to exclude evidence of conversations as to an agent's authority to bind a lessor by an agreement respecting improvements, where his authority as an agent had been terminated and he had informed appellants that the lessor refused to do anything in regard to the matter.

LANDLORD AND TENANT (89) — EVICTION — WAIVER — PAYMENT OF RENT.  In unlawful detainer a partial eviction in the preceding year is waived by the payment of rent on the due date without question.

APPEAL (375)—REVIEW—MATTERS NOT BEFORE LOWER COURT.  Defendants in unlawful detainer not having pleaded an eviction as a defense, cannot raise the objection for the first time in the supreme court.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered April 9, 1919, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action of unlawful detainer.  Affirmed.

*Stephen E. Chaffee,* for appellants.
*Grady & Shumate,* for respondent.

[1]Reported in 186 Pac. 255.

MACKINTOSH, J.—On January 30, 1917, Cassie A. Rhodes, in writing, leased to the appellants certain lands in Yakima county for a term beginning on that date and ending March 1, 1920. The lease provided that the rent should be payable: $200 on December 1, 1917; $350 on December 1, 1918; and $350 on December 1, 1919, and further provided: "that, in the event the second party shall not be able to market his crops at advantageous prices prior to said date, then, and in that event, said rent need not be paid until February 1, following." The lease also provided that Mrs. Rhodes should "see that water is delivered on two of the highest points on said premises." In December, 1916, Mrs. Rhodes had contracted with one Lichty to give him entire charge of farming operations and improvements made upon the land, and he was the person who, as Mrs. Rhodes' agent, negotiated the lease with the appellants. In order to farm the land it was necessary to construct a pipe line to comply with the provision in the lease which we have quoted. After appellants' lease had been executed, a six-inch pipe line was constructed to carry the water to the leased land and also to supply water for an adjoining owner named Holt. An agreement was entered into between Mrs. Rhodes and Holt whereby Holt was to pay 3/14ths and Mrs. Rhodes 11/14ths of the cost of construction.

In January, 1918, Mrs. Rhodes sold the property to respondent, who informed Lichty of his ownership of the property and terminated the agency which Lichty had theretofore had from Mrs. Rhodes. Respondent also informed the appellants that he was the owner of the land. Subsequent to this time the appellants and Holt undertook a reconstruction of the pipe line so that the Holt land would be better served by a water supply. The matter of this reconstruction was

taken up with Lichty and, without any authority from the respondent, he authorized the appellants to reconstruct the pipe line and to reimburse themselves by retaining 11/14ths of the cost of reconstruction from the rent due the respondent. When the crop for 1918 was sold, the check for it was made out jointly to the respondent and the appellants, the latter depositing it in the bank with instructions to pay $241 of it to the respondent and the balance to them. This $241 represented the difference between 11/14ths of the cost of reconstructing the pipe line and the $350 for the year 1918. When this amount was tendered the respondent he refused to accept it, and on January 17, 1919, gave the appellants the statutory notice to pay the rent or vacate the premises. The appellants failing to comply with this notice, this action of unlawful detainer was brought, upon the trial of which the court entered judgment upon a directed verdict in favor of the respondent.

The first point raised by the appellants is that, as the lease provided that they might have until February 1, 1919, to pay the rent if they could not prior to that time sell their crops advantageously, the notice to quit and suit were premature; that subdivision 3 of § 812, Rem. Code, provides for notice to quit only after default in the payment of rent, and that there had been no default. The lease contained, as we have seen, an option for an extension of the time of the payment of the rent until February 1, 1919, but the appellants, in their answer, pleaded and tendered the rent which they considered due and owing, that is, the sum of $241, prior to the commencement of the action, and renewed the tender by bringing the amount into court. By this act they admitted the rent was then due and owing and waived the option to pay on Feb-

ruary 1, 1919. Their tender amounted to a statement
by them that the rent was due at the time the notice
to quit was served and suit begun, and they said, by
their tender, that they were offering the full amount
of the rent due, $241 in cash and $109 in the form of
a credit for money which they had expended in recon-
structing the pipe line. Where a party claims that he
has the option of making payment on different dates
and, prior to the arrival of the second date, tenders
the entire amount due, or what he considers due, by
·that act he admits that whatever is owing by him is
then due and waives his right to claim the benefit of
his option to pay on the later date. The trial court
was correct in so holding, and then allowed the ap-
pellants to show that the deduction of 11/14ths of the
cost of reconstruction of the pipe line was such a de-
duction as they were entitled to credit for. Upon this
question the evidence shows that the pipe line, as
originally constructed, complied with the agreement
made by Mrs. Rhodes that she would see "that water
is delivered on two of the highest points on said
premises." The appellants are not entitled to a credit
for the reconstruction of this pipe line to better serve
the Holt property; the arrangement for this recon-
struction not having been authorized by the respond-
ent or by any one rightfully representing him. The
testimony below presented no question which was
properly submissible to the jury, and the directed ver-
dict was a correct determination of the litigation.

Some claim is made that the notice to quit was
defective in that it contained Mrs. Rhodes' name as
well as the name of the respondent. As we view the
notice, it was sufficient and correct.

Error is also assigned upon the court's refusal to
permit testimony by the appellants as to conversations
between them and Mrs. Rhodes as to Lichty's author-

ity and the reason of the transfer of the property by Mrs. Rhodes to Sowle. Whatever authority Lichty may have had on the premises was terminated either by the execution of the lease or of the deed to respondent, Lichty's agency not having been coupled with any interest in the land. Further than this, the appellants were notified that respondent was the owner of the land and that Lichty had been notified that he was to do nothing more in regard to the land, and he had informed the appellants that the respondent had refused to do anything in regard to the pipe line; and yet, with this condition of facts, the appellants proceeded under Lichty's assumed authority and rebuilt the line. The evidence is convincing that the original pipe line answered the requirements of the lease.

Finally, it is argued that the appellants suffered a partial eviction by reason that the pipe line, as originally built, was not adequate to deliver sufficient water to the premises. The answer to this lies in the fact that the partial eviction, if there had been one, occurred in the year 1917, for which year the rent was paid on the due date without question, and there is no claim of any partial eviction in 1918, the rent for which is the subject of this litigation, nor was the partial eviction pleaded as a defense and is for the first time raised in this court.

An examination of the entire record satisfies this court that the judgment should be affirmed, and it is so ordered.

HOLCOMB, C. J., MAIN, PARKER, and MITCHELL, JJ., concur.